UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

:
**DESHAWN JACKSON,**
:
            Plaintiff,
:
                                           :     **MEMORANDUM**
                                           :     **DECISION AND ORDER**
            **- against -**                :
                                           :     17-CV-6118 (AMD)(AKT)
**POM RECOVERIES, INC.,**
:
            Defendant.
:
:
---------------------------------------------------------------- X

**ANN M. DONNELLY,** United States District Judge:

        On October 20, 2017, the plaintiff brought this action against POM Recoveries, Inc.,

alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692.  The

parties cross-moved for summary judgment on February 27, 2020.  (ECF Nos. 61, 62.)[1]  For the

reasons set forth below, the defendant's motion is granted and the plaintiff's motion is denied.

## BACKGROUND

        The disputed debt arises from medical treatment that the plaintiff's daughter allegedly

received at New York Methodist Hospital on May 3, 2016.  (ECF No. 63-3 at ¶¶ 7-8.)  In an

effort to collect the debt on behalf of New York Methodist Hospital, the defendant sent a

collection letter to the plaintiff on August 3, 2017.  (ECF No. 63-3 at ¶ 9.)  The letter begins with

the following: "We represent NEW YORK METHODIST HOSPITAL, the creditor listed above.

NEW YORK METHODIST HOSPITAL records indicate that you have a past due balance in the

amount of $2,467.75."  (ECF No. 1-2 (Ex. A); ECF No. 63-3 at ¶ 12.)  The front page of the

---

[1] The Honorable Arthur D. Spatt was originally assigned to this case.  It was reassigned to me in
December of 2019.

letter continues: "This debt may be covered entirely or in part by your insurance carrier (e.g., Blue Cross/Blue Shield, Medicare/Medicaid, your union or other)—provided you are qualified. If you feel that you may qualify, please complete the back portion of this letter and return it in the enclosed return envelope.  If you do not qualify please enclose your payment."  (ECF No. 1-2 (Ex. A); ECF No. 63-3 at ¶ 13.)  Next, in bold, capitalized typeface, the letter states that the plaintiff must notify the defendant in writing within 30 days if he intends to dispute the validity of the debt.  (ECF No. 1-2 (Ex. A).)

A paragraph entitled "ASSIGNMENT AND RELEASE AUTHORIZATION" appears on the reverse side of the letter:

> "I hereby assign any and all benefits to which I may be entitled, to the creditor indicated, on the reverse side of this page, and authorize said benefits to be paid directly to said creditor or to its agency or representative who will be acting on their behalf. I understand further that I am financially responsible to said creditor for all charges not covered by this assignment."

(ECF No. 1-2 (Ex. A); ECF No. 63-3 at ¶ 14.)  The plaintiff did not sign or return the assignment and release authorization to the defendant.[2]  (ECF No. 63-3 at ¶ 16.)

## STANDARD OF REVIEW

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits or other documentation, show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The movant has the

---

[2] The Second Circuit has held that an alleged violation of §§ 1692e and 1692g satisfies the injury-in-fact requirement of Article III.  *See Zirogiannis v. Seterus, Inc.*, 707 F. App'x 724, 727 (2d Cir. Sept. 12, 2017) (summary order) ("[W]e have no trouble concluding that § 1692g of the FDCPA protects an individual's concrete interests" (internal quotation marks and brackets omitted)); *Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. May 26, 2017) (summary order) (concluding that plaintiff's allegations of violations of §§ 1692e and 1692g by themselves established the concrete injury necessary for standing); *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018) (same).

burden of showing the absence of any genuine dispute as to a material fact. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (citation omitted).  A fact is "material" when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (internal citations omitted).  Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial.  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## DISCUSSION

"Congress enacted the FDCPA to protect against the abusive debt collection practices likely to disrupt a debtor's life," *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018) (internal quotations and citation omitted), and prohibit the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §§ 1692, 1692e.  The statute also prohibits "unfair or unconscionable means to collect or attempt to collect debt." 15 U.S.C. § 1692f.

"In the Second Circuit, 'the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008)).  This standard requires "an objective analysis that seeks to protect the naive from abusive practices, while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters."

*Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360, 363 (2d Cir. 2005) (internal citations omitted).  "[I]n crafting a norm that protects the naïve . . . the courts have carefully preserved the concept of reasonableness," and may assume that "even the least sophisticated consumer . . . possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care."  *Id.*  (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318–19 (2d Cir. 1993)).  Thus, the defendant's communication is viewed "from the perspective of a debtor who is uninformed, naive, or trusting, but is making basic, reasonable and logical deductions and inferences."  *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007) (internal citation omitted).  A court reviewing a disputed communication does not isolate words or phrases, but considers the letter "in its entirety."  *Schlesinger v. Jzanus Ltd.*, No. 17-CV-3648, 2018 WL 2376302, at *2 (E.D.N.Y. May 24, 2018).

I.      **1692g**

Section 1692g of the FDCPA requires a debt collector attempting to collect a debt to provide certain information to a debtor, commonly referred to as a "validation notice."  15 U.S.C. § 1692g (2006); *Vetrano v. CBE Group, Inc.*, No. 15-CV-3185, 2016 WL 4083384, at *5 (E.D.N.Y. Apr. 1, 2016).  The purpose of the validation notice is to protect consumers from "debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid" by "inform[ing consumers that they have] certain rights, including the rights to make a written request for verification of the debt and to dispute the validity of debt" within 30 days.  *Lotito v. Recovery Assocs. Inc.*, No. 13-CV-5833, 2014 WL 4659464, at *3 (E.D.N.Y. Sept. 17, 2014) (citing *Ellis v. Solomon and Soloman, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010) (internal quotations omitted) and *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 309 (2d Cir. 2003)).  Specifically, the validation notice must include:

(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer disputes the validity of the debt, or any portion thereof, within thirty days after receipt of the notice, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor, upon the consumer's written request within the thirty-day period.

15 U.S.C. § 1692g; *Vetrano*, 2016 WL 4083384, at *5.

The debt collector must also convey the information in § 1962g clearly. *Jacobson*, 516 F.3d at 90 (citation omitted). A validation notice is not legally sufficient "if that notice is overshadowed or contradicted by other language in communications to the debtor." *Jacobson*, 516 F.3d at 90 (citing *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998)). "A notice overshadows or contradicts the validation notice if it would make the least sophisticated consumer uncertain as to her rights." *Jacobson*, 516 F.3d at 90 (internal quotations omitted); *see also Vertrano*, 2016 WL 4083384, at *5 ("'Even if a debt collector conveys the required information, the collector nonetheless violates the [FDCPA] if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty.'" (quoting *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001))). "Since 2006, this prohibition against 'overshadowing' has also been enshrined in the text of the FDCPA itself: '[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.'" *Belichenko v. Gem Recovery Systems*, 17-CV-01731 (ERK) (ST), 2017 WL 6558499, at *6 (E.D.N.Y. Dec. 22, 2017) (quoting § 1692g(b)).

The plaintiff contends that the defendant's assignment and release authorization overshadows the validation notice in two ways: (i) a reader might simply overlook or otherwise forego his right to dispute the alleged debt and conclude that the insurance provider will pay the debt; and (ii) a reader might think that signing and returning the assignment and release authorization is time sensitive.  (ECF No. 62-4 at 18.)   The essence of the plaintiff's argument is that the letter was purposefully designed to "fool consumers" into giving up their validation rights.  (*Id.*)  Because I find that the assignment and authorization release does not overshadow the validation notice, I conclude that the collection letter's inclusion of the assignment and release authorization does not violate the FDCPA as a matter of law.

The plaintiff concedes, as he must, that the defendant's letter includes a validation notice. He argues nevertheless that an unsophisticated consumer might simply overlook the notice.  But even the least sophisticated consumer is expected to "read a collection notice with some care." *See Greco*, 412 F.3d at 363.  Read as a whole, the defendant's collection letter clearly advises the debtor of his validation rights.

It would be particularly difficult for even the least sophisticated consumer to miss the validation notice, because it is written in capital letters, in bold typeface, centered and set apart from the other text, and reads, in relevant part:

**UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THE DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT**

**OR OBTAIN A COPY OF A JUDGMENT AND MAIL YOU A COPY OF SUCH
JUDGMENT OR VERIFICATION.**

(ECF No. 1-2 (Ex. A) (emphasis in original).)  This validation notice clearly and
correctly informs the plaintiff that he has the right to dispute the validity of the debt within 30
days.

The fact that the notice is preceded by a paragraph advising the debtor that some or all of
the debt may be covered by his insurance carrier does not overshadow or contradict the more
prominently displayed validation notice. *Allen v. Advanced Call Ctr. Techs., L.L.C.*, 2019 WL
4887683, at *7 (E.D.N.Y. Sept. 30, 2019) (the placement of the validation notice in the sixth
paragraph of a collection letter would not lead a debtor to overlook her rights because the court
assumes the debtor will read the collection letter in full).  Indeed, the plaintiff does not argue that
the defendant should have omitted this paragraph, nor does he suggest an alternate placement for
it.

Especially unpersuasive is the plaintiff's claim that the assignment and release
authorization on the reverse side of the letter, which requires the signatory to agree that he is
"financially responsible to said creditor for all charges not covered by his insurance company,"
was "designed to trick the [least sophisticated consumer] into waiving [his validation rights] by
signing the authorization."  (ECF No. 64 at 19.)  The least sophisticated consumer is expected to
make "basic, reasonable and logical deductions and inferences" about the collection letter.
*Dewees*, 506 F. Supp. 2d at 132.  A debtor making reasonable inferences and possessing at least
a "rudimentary" knowledge of the world would not agree to be financially responsible for any
portion of a debt he did not believe he owed.  *Greco*, 412 F.3d at 363.

Viewed in its entirety, the collection letter adequately advised even the least sophisticated consumer of his validation rights.  The collection notice, which the debtor is expected to read, is clear and unambiguous, and nothing in the letter undermines it, including the language on the reverse side of the letter.  *See Sturm v. Alpha Recovery Corp.*, 2020 WL 1140425, at *5 (E.D.N.Y. Mar. 6, 2020) (dismissing the plaintiff's claim that language on the reverse side of a letter overshadowed the validation notice on the front of the letter because there was "simply no language on the reverse side that pertains to a debtor's rights as set forth in the § 1692g notice, and thus no basis for a reasonable consumer to be uncertain of her rights as set forth in the body of the Letter".); *see also McStay v. I.C. Sys., Inc.*, 308 F.3d 188, 191 (2d Cir. 2002) (even where a letter may contain some ambiguity, there is no FDCPA violation if that ambiguity "dissipates when read in conjunction with" other language in the letter).

Moreover, the plain language of the letter refutes the plaintiff's claim that the least sophisticated consumer could be tricked into believing that an insurance company would pay the alleged debt.  The collection letter says that an insurer "may" pay the recipient's debt "provided" the recipient is qualified and invites the debtor to provide carrier information; on the reverse side of the letter, the reader is advised that an insurance provider may not pay the entirety of the debt, and that the debtor would be responsible for paying any amount that his insurance did not cover. *See Anela v. AR Res., Inc.*, No. 17-CV-5624, 2018 WL 2961813, at *5 (E.D. Pa. June 12, 2018) (language in a collection notice instructing a debtor to call the collection agency if the debtor carried "any insurance that may cover [the] obligation" did not interfere with, overshadow or contradict the validation notice); *Cruz v. Financial Recoveries*, No. 17-CV-0753, 2016 WL 3545322 at *4 (D.N.J. June 28, 2016) (requesting insurance information if the debtor believed the insured would cover the debt did not affect "the bold-faced language outlining the debt

dispute process").  In short, even the least sophisticated consumer would understand that he could contest the debt instead of providing his insurance information and agreeing to pay the uncovered balance of the debt.

A debt collector who includes an assignment and release authorization in a collection letter does not, without more, violate the FDCPA; creditors are not prohibited from offering services to help the debtor settle the claim.  For example, in *Day v. Allied Interstate, Inc.*, the debt collector included a perforated payment stub with the collection letter enabling the debtor to remove the stub and mail his payment; Day argued that Allied Interstate Inc. violated § 1692g merely by including the stub. No. 09-CV-0495, 2009 WL 1139474, at *1 (E.D.N.Y. Apr. 27, 2009).  The court rejected this challenge, since the payment stub was simply "a convenience" for a debtor who wanted to settle a debt, and therefore did not overshadow the validation notice.  *Id.*  The same is true of the assignment and release authorization at issue here.  The defendant provided a convenient way for the debtor to submit insurance information, while making it clear that the debtor was responsible for any residual balance.  Nothing in this section of the letter coerced the recipient into accepting the one option over another.  *See Ehrich v. I.C. System, Inc.*, 681 F. Supp. 2d 265, 271-72 (E.D.N.Y.2010) ("[A] debt collection letter may include a convenience, something (like a phone number) that subtly encourages a consumer to make a payment on a debt.") (internal quotation marks omitted).

Similarly meritless is the plaintiff's argument that the least sophisticated consumer might believe that signing and returning the assignment and release authorization was time sensitive. The collection letter does not set a deadline for the debtor to return the assignment and release authorization, imply that the debtor must return the authorization within a specific timeframe or suggest the recipient must take any immediate action.  *See, e.g.*, *Savino*, 164 F.3d at 85-86

(collection letter stating "the hospital insists on immediate payment or a valid reason for your failure to make payment" overshadowed validation notice on back of letter); *Laster v. Cole*, No. 99-CV-2837, 2000 WL 306848, at *3-4 (E.D.N.Y. Mar. 20, 2000) (letter threatening to make "litigation recommendations" if payment not sent in seven days overshadowed validation notice); *Sokolski v. Trans Union Corp.*, 53 F. Supp. 2d 307, 313-14 (E.D.N.Y. 1999) (validation notice overshadowed by language in letter stating "[t]o avoid damaging your credit record, please pay the amount at once").  No rational debtor, even an unsophisticated one, could sensibly assume the assignment and release authorization altered or shortened the 30-day validation notice timeline.

Not even the least sophisticated consumer could be misled into thinking that he should forego requesting validation of or disputing the debt within the 30-day period, as set forth in the bold, capitalized typeface on the front of the letter, in favor of returning the assignment and release authorization and agreeing to pay the balance of the debt.  *See, e.g.*, *Jacobson*, 516 F.3d at 92 (finding that although the validation letter contained a demand for immediate payment, the body of the letter adequately explained the plaintiff's rights to dispute the debt and seek verification of the debt so that "even the least sophisticated debtor would understand that she had the option to submit a notice of dispute, rather than pay the claimed sum."); *Spira v. Ashwood Fin. Inc.,* 358 F. Supp. 2d 150, 157 (E.D.N.Y. 2005) (finding no "actual or apparent contradiction" in a collection letter that presented the plaintiff with two options, i.e., to pay the debt or dispute it, and did not "suggest that [the plaintiff] forego the second option in favor of payment.").  Therefore, I grant the defendant's motion for summary judgment, deny the plaintiff's cross-motion and dismiss Count One of the complaint.

## II.       1692e(5) & 1692e(10)

15 U.S.C. § 1692e prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt."  The statute sets forth a "non-exhaustive list" of practices that fall within this ban.  *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016).

A plaintiff alleging a violation of § 1692e(5) must show that defendants (1) "threat[ened] to take any action," (2) "that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).  The threatened action must be "authorized, likely and imminent."  *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir.1993).  The language of the communication, "taken as a whole," must leave the least sophisticated reader with the impression that "some type of legal action has already been or is about to be initiated and can be averted from running its course only by payment."  *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25 (2d Cir. 1989).

The plaintiff alleges that the assignment and release authorization violates § 1692e(5) because the defendant knew or should have known the plaintiff's insurance carrier would not pay the debt, because the plaintiff's time to file a claim had lapsed.  (ECF No. 62-4 at 19-20.)  This means, the plaintiff says, that the defendant had no intention of seeking payment under the plaintiff's insurance policy.  (*Id.*)  But the collection letter does not specify that the defendant would seek payment from the insurance company, the collection letter simply states: "To assist you in clearing up this account, please answer the following and return in envelope provided." (ECF No. 1-2 (Ex. A).)  Also, how would the defendant know whether the time to file a claim had lapsed?

11

Courts have interpreted § 1692e(5) to protect against either (i) threats to commence legal action or (ii) threats to issue a report to a credit bureau.  *See, e.g.*, *Jackson v. Immediate Credit Recovery, Inc.*, No. 05-CV-5697, 2006 WL 3453180, at \*6 (E.D.N.Y. Nov. 28, 2006) (an unsophisticated consumer may interpret the collection letter to mean that a failure to pay immediately would adversely affect her credit rating); *Wiener v. Bloomfield*, 901 F. Supp. 771, 775-76 (S.D.N.Y. 1995) (granting summary judgment for plaintiff under § 1692e where debt collector sent the consumer copies of summons and complaint, captioned for an improper venue, implying that papers had been or were about to be filed in court unless the debtor responded by the deadline).  While § 1692e(5) is not explicitly limited to these kinds of actions, seeking information about the plaintiff's insurance provider is a far cry from threatening litigation.

More important, the least sophisticated consumer could not reasonably interpret the assignment and release authorization as a threat.  The defendant gave the plaintiff an option to provide his insurance information as a way to move forward with the debt collection process; the defendant did not insinuate that providing such information would harm the plaintiff in any way.  Collection letters that advise a debtor about the collection agency's options in pursuing the debt—here, contacting the debtor's insurance carrier—are permissible.  *Spira,* 358 F. Supp. 2d at 160 (advising the debtor that "it is our intent to pursue collection of this debt through every means available" was an accurate statement that defendant had several enforcement options from which to choose); *Jackson*, 2006 WL 3453180, at \*6 ("Factors courts consider include . . . whether the letter specifically states legal action will be taken or merely describes available alternatives including possible legal action . . .").  Because the assignment and release authorization was not a "threat" under § 1692e(5), I do not address whether the plaintiff has met

his burden of showing that the defendant did not intend to contact the plaintiff's insurance carrier.

The plaintiff also alleges a violation of § 1692e(10).  To establish a violation of § 1692e(10), a plaintiff must show that the defendant used "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).  For the purposes of § 1692e(10), a "collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cr. 1996).  "When a statement is susceptible [to] only one reasonable interpretation, the court should determine whether that interpretation is false in violation of section 1692e(10), ignoring any unreasonable interpretations."  *Ghulyani v. Stephens & Michaels Assocs., Inc.*, No. 15-CV-5191, 2015 WL 6503849, at *2 (S.D.N.Y. Oct. 26, 2015); *see also Rogers v. Capital One Servs.*, LLC, 447 F. App'x 246, 248 (2d Cir. 2011) (the creditor's use of "attractive repayment terms to 'lure' consumers into negotiations" did not violate § 1692e(10) because Rogers did not allege that "the repayment offer was not as represented").

The plaintiff does not explain what is deceptive about the collection notice.  The "standard for determining a violation of § 1692e(10) is essentially the same as that for § 1692g." *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 666 (S.D.N.Y. 2006) (citing *Russell*, 74 F.3d at 35 ("Because the initial collection notice in the instant case was reasonably susceptible to an inaccurate reading, it was also deceptive within the meaning of the Act.") and *Vera v. Trans-Cont'l Credit and Collection Corp.*, No. 98-CV-1866, 1999 WL 163162, at *4 (S.D.N.Y. Mar. 24, 1999) ("For essentially the same reasons that I conclude that the debt validation notice violates § 1692g(a)(3), I also conclude that the notice violates § 1692e(10).").

Accordingly, the collection letter contains no cognizable threat to the plaintiff, and is not deceptive or false.  Therefore, I grant the defendant's motion for summary judgment, deny the plaintiff's cross-motion and dismiss Count Two of the complaint.

**III.    1692k**

The defendant moves for attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), which provides "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."  The defendant argues that the plaintiff "commenced this lawsuit in bad faith and for the purpose of harassing the defendant" because the action "is patently baseless and constitutes an intentional abuse of the FDCPA by a consumer."  (ECF No. 61-2 at 26.)

Section 1692k(a)(3) "runs only against a party, not his counsel."  *Eisner v. Enhanced Recovery Co.*, LLC, 407 F. Supp. 3d 132, 138 (E.D.N.Y. 2019).  Thus, prevailing on a § 1692k(a)(3) claim requires proof of the plaintiff's bad faith, not just his lawyer's.[3]  *Id.*  Aside from conclusory assertions that the plaintiff instigated this action to harass the defendant, the defendant does not cite specific evidence that the plaintiff acted in bad faith.  Instead, the defendant focuses on plaintiff's counsel, Barshay Sanders, PLLC, to which it refers derisively as "the BS law firm," and claims that the firm is "notorious for alleging baseless allegations in regard to the 30 day dispute/verification rights" and has filed "hundreds upon hundreds" of

---

[3] As the Honorable I. Leo Glasser recently found, a defendant is also entitled to attorney's fees if an attorney brings a case without a plaintiff's "participation, and in spite of the fact that she was not subjected to any 'abuse debt practices by debt collectors[.]'"  *Alcivar v. Enhanced Recovery Co.*, No. 17-CV-2275, 2020 WL 2559845, at *4 (E.D.N.Y. May 20, 2020) (citing § 1692(e)).  The defendants here do not allege that Barshay Sanders, PLLC brought this action without the plaintiff's knowledge or involvement, and thus the prevailing standard requiring specific allegations of the plaintiff's bad faith, not just his lawyer's, governs my decision.

FDCPA actions.  (ECF No. 65 at 9-10.)  Even if the defendant had offered concrete evidence to support these accusations, there is no proof that the plaintiff acted in bad faith or to harass the defendant.  Therefore, I deny the defendant's motion for attorney's fees and costs pursuant to § 1692k(a)(3).[4]

## CONCLUSION

Accordingly, for the reasons set forth above, the defendant's motion for summary judgment is granted.  The plaintiff's motion for summary judgment is denied.  The defendant's motion for attorney's fees and costs pursuant to § 1692k(a)(3) is denied.  The Clerk of Court is respectfully directed to enter judgment in favor of the defendant and close the case.

**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        August 21, 2020

[4] *Ocampo v. Client Services, Inc.*, in which the Honorable Brian M. Cogan described the plaintiff's claim as a "lawyer's case" that "allege[d] a defect of which only a sophisticated lawyer, not the least sophisticated consumer, would conceive," No. 18-CV-4326, 2019 WL 2881422, at *3 (E.D.N.Y. July 3, 2019), and *Kraus v. Prof'l Bureau of Collections of MD, Inc.*, which the defendant cites for the proposition that the FDCPA has previously been the subject of litigation abuses, 281 F. Supp. 3d 312 (E.D.N.Y. 2017), do not compel a different result; neither Judge Cogan nor Judge Glasser, who presided in *Kraus*, imposed attorney's fees.